**UNITED STATES DISTRICT COURT**
**DISTRICT OF MAINE**

**SHARONDA BOSTON,**
Plaintiff,
v.
**KAMPGROUNDS OF AMERICA, INC.,**
**d/b/a TERRAMOR OUTDOOR RESORT,**
Defendant.

Civil Action No. ____________
**COMPLAINT AND JURY DEMAND**
(Employment Discrimination and Retaliation)

## COMPLAINT

## I. NATURE OF THE ACTION

1. Plaintiff Sharonda Boston brings this action against her former seasonal employer, Kampgrounds of America, Inc., doing business as Terramor Outdoor Resort ("KOA" or "Terramor"), for discrimination, hostile work environment, and retaliation under Title VII of the Civil Rights Act of 1964, and for race discrimination in the making and enforcement of her employment relationship under 42 U.S.C. § 1981.

2. Plaintiff is a Black woman. She was employed as a Housekeeping Lead at Terramor in Bar Harbor, Maine, during the 2025 season and lived in employer-provided housing that was tied to her employment.

3. Plaintiff completed the seasonal job. She does not allege that KOA fired her, and she does not seek lost wages based on a termination. Her claims concern the treatment she experienced while employed and living in employer-provided housing, including the removal of a housing benefit tied to her supervisory position, the handling of her complaints, continued harassment after she complained, and a disputed early housing departure date.

4. Plaintiff filed an EEOC charge alleging race, color, sex, disability, and retaliation. This complaint pleads the federal claims Plaintiff can presently support from the available record. Plaintiff also describes the mental-health effects she reported to KOA and the EEOC as part of her damages; she does not invent or claim a medical diagnosis she does not have.

## II. JURISDICTION AND VENUE

5. This Court has subject-matter jurisdiction under 28 U.S.C. § 1331, 42 U.S.C. § 2000e-5(f)(3), and 42 U.S.C. § 1981 because this action arises under federal civil-rights law.

6. Venue is proper in the District of Maine because the alleged unlawful employment practices occurred at Terramor Outdoor Resort in Bar Harbor, Hancock County, Maine.

7. Plaintiff seeks a jury trial on all issues triable by jury.

## III. PARTIES

8. Plaintiff Sharonda Boston is an adult individual. Her current mailing address for court correspondence is 620 S. 7th Street, Suite 2079, Las Vegas, Nevada 89101. Plaintiff is proceeding pro se.

9. Defendant Kampgrounds of America, Inc. is a corporation that does business in Maine under the Terramor Outdoor Resort name. The Terramor property at issue is located at 1453 State Highway 102, Bar Harbor, Maine 04609. Upon information and belief, Defendant employed at least fifteen employees during the relevant period and was an "employer" within the meaning of Title VII.

## IV. ADMINISTRATIVE EXHAUSTION AND TIMELINESS

10. Plaintiff submitted an EEOC inquiry concerning Terramor on December 8, 2025. The EEOC matter became Charge No. 523-2026-00822.

11. On June 27, 2026, Plaintiff signed an EEOC Charge of Discrimination against Kampgrounds of America / Terramor Outdoor Resort. The charge checked Race, Color, Sex, Disability, and Retaliation and identified October 27, 2025 as the most recent job action Plaintiff believed was discriminatory.

12. The EEOC issued a Determination and Notice of Rights dated July 15, 2026. The EEOC later mailed a copy on August 10, 2026 to an old Montana address; that mailing was returned by the United States Postal Service. Plaintiff first actually obtained the scanned right-to-sue packet by email from an EEOC representative on August 28, 2026.

13. This action is being filed no later than October 13, 2026. It is therefore timely even if the July 15, 2026 issuance date were treated as the date that triggered the 90-day filing period, and Plaintiff further preserves the documented later-receipt facts described above.

## V. FACTUAL ALLEGATIONS

14. On August 7, 2025, Assistant Manager Richard Porter sent Plaintiff a written offer for the Housekeeping Lead position at $18.00 per hour. The offer also provided employer housing for $92.50 per biweekly paycheck, including utilities, Wi-Fi, and laundry.

15. On August 14, 2025, Porter wrote to Plaintiff: "Because of your position, we are going to place you in our supervisor housing," and described a private furnished bedroom in a house on the property. Plaintiff understood supervisor housing to be a benefit connected to her Housekeeping Lead position.

16. Plaintiff began working at Terramor in approximately mid-August 2025. During August and September, she kept a detailed contemporaneous log of incidents she experienced in the workplace and employee housing, including repeated disturbances, unusual staff presence around her work and living areas, concerns about privacy, and conduct she perceived as intimidating or targeted.

17. On or about September 28, 2025, Porter suggested that Plaintiff move from supervisor housing to other employee housing. Plaintiff did not agree to move at that time. According to Plaintiff, Porter described the proposed move as providing more privacy and independence and did not tell her that she had violated any rule.

18. On September 29, 2025, Plaintiff returned to her vehicle and found the trunk open. She promptly emailed Porter asking him to review security footage. On September 30, Porter responded in writing that footage showed the trunk open later in the day and that the vehicle lights blinked and the trunk appeared to open at approximately 10:09 a.m.; he stated that he did

not see anyone in the immediate area. Plaintiff does not allege that the available footage identifies who or what caused the trunk to open.

19. On the morning of October 2, 2025, Plaintiff emailed KOA People & Culture, HR, and a corporate feedback address requesting the appropriate corporate contact for a formal workplace complaint concerning local management and ongoing concerns. The actual email is timestamped 8:51 a.m.; a later narrative Plaintiff prepared listed 10:51 a.m. Plaintiff relies on the contemporaneous email timestamp.

20. Later on October 2, while Plaintiff was working, a Lakeview Landscaping worker referred to Plaintiff using the gendered insult "bitch" and stated that he had called Omar Arar, a Terramor manager. Plaintiff objected to and reported the sex-specific insult to Arar and asked management to address the incident. Plaintiff alleges that Arar instead told her to stay out of the contractors' way and discouraged her from videotaping people.

21. At approximately 2:27 p.m. on October 2, Plaintiff was called into a meeting with Porter, Arar, and General Manager Russell Gibbons. Plaintiff alleges that management told her she had to leave supervisor housing by noon on October 4 because she was "making everyone uncomfortable" and causing others to "walk on eggshells." Plaintiff alleges that Gibbons asked her more than once whether she had contacted his boss or higher management.

22. Plaintiff alleges that management did not provide her with a written disciplinary notice or identify a policy violation as the basis for the mandatory housing change. The mandatory move occurred after Porter had previously suggested a move on September 28; Plaintiff therefore does not allege that the idea of moving her first arose on October 2.

23. On October 4, 2025, Plaintiff moved from supervisor housing into employee housing referred to as E2. Plaintiff alleges that the new room contained substantial dust, trash, standing or stagnant water, and other cleanliness problems. She alleges that Gibbons told her that her supervisor, Summer Pobletts, had been expected to clean the room.

24. After the October 4 move, Plaintiff alleges that she experienced repeated loud banging, door slamming, stomping, and shared-wall disturbances involving Lia Hardy and Elena Hardy. Plaintiff documented the incidents and later submitted a separate written complaint to HR. Plaintiff alleges that the disturbances interfered with her sleep and ability to rest.

25. On October 10, 2025, Plaintiff emailed KOA HR and Kyleen Peterson a formal written complaint of approximately thirty-three pages. The complaint described harassment, retaliation, workplace and housing concerns, the October 2 contractor incident and gendered insult, management conduct, and the effect of the situation on Plaintiff's safety and well-being. The complaint also invoked KOA's harassment, equity, and nondiscrimination policies.

26. In that complaint and related communications, Plaintiff reported that the continuing conditions were causing sleepless nights, anxiety, a constant feeling of being on guard, emotional distress, and interference with her ability to rest and perform at work. Plaintiff does not allege a medical diagnosis. These were the functional and mental-health effects she reported while the events were occurring.

27. On October 14, 2025, Porter told Plaintiff that she had to leave employer housing by October 27 and referred to the seasonal water shutdown. Plaintiff had understood from a verbal statement during her interview that she could remain in employer housing through October 31 and had planned her transition to a later seasonal job in Montana around that understanding.

28. KOA later disputed Plaintiff’s understanding of the housing date. In Peterson’s October 22 response, Peterson characterized October 27 as the original departure date that had been discussed. Plaintiff therefore alleges that the October 31 date was a verbal representation that is disputed; she does not allege that KOA gave her a written October 31 promise.

29. On October 15, Plaintiff sent HR a contemporaneous email describing the disputed move-out date. In that email she also reported that another employee, Richard Moya Fuentes, had told her that he was being permitted to remain in employer housing through October 31

because his daughter was coming to help him relocate. Plaintiff relies on the different housing dates as evidence of unequal treatment but does not allege Moya Fuentes's race based merely on his Puerto Rican background.

30. On October 14 and 15, Plaintiff told Peterson that she did not feel she could speak openly with HR from employer housing because of thin walls and lack of privacy. She requested a call at a time when she could speak privately away from the property.

31. On October 15, Plaintiff informed KOA HR that she had filed a report with local police regarding the escalation of her safety concerns and asked that the development be documented in her HR file.

32. On October 16, Plaintiff submitted a written complaint concerning Lia Hardy, including repeated noise, banging, slamming, sleep disruption, anxiety, and interference with rest and work. Plaintiff also participated in a telephone meeting with Peterson and Alexis Urbaniak concerning her complaints.

33. Plaintiff repeatedly asked KOA to clarify the identity and employment status of an individual she knew as "Erick" or "Erica" who had been placed in or around employee housing. Plaintiff states that she could not locate that individual in the schedule or employee directory. Plaintiff does not allege as an established fact that the individual was not a legitimate employee; she alleges that she sought verification and did not receive a documented answer.

34. On October 22, Plaintiff sent additional escalation emails to HR and senior KOA recipients asking for clarification about unfamiliar people in employee housing, confirmation that her submitted footage had been reviewed, whether anyone had been questioned, what investigative steps had been taken, and what findings had been made.

35. On October 22 at approximately 8:09 a.m., Peterson sent Plaintiff a written response. Peterson stated that KOA could not extend Plaintiff's stay on the property, maintained the October 27 departure date, stated that some reported noises might be attributable to construction

or wildlife, noted that vendors and contractors had access to the property, and asked Plaintiff for a copy of the police report.

36. Plaintiff alleges that the October 22 response did not answer several of the specific investigative questions she had asked, did not provide a documented conclusion as to the identity issue she raised, and did not tell her that all of the recordings or evidence she submitted had been reviewed.

37. Plaintiff completed her seasonal work around the resort's late-October closure. She was not fired. She remained on the property only through the housing departure date imposed by KOA and then traveled on toward her next seasonal employment. Plaintiff does not claim lost wages from Terramor.

38. Plaintiff alleges that the combined treatment in the workplace and employer housing, the gendered insult and management response, the removal from housing specifically tied to her supervisory position, the conditions after the move, the different housing-departure treatment she reported, and KOA's response after repeated complaints caused significant anxiety, sleep disruption, hypervigilance, emotional distress, and impairment of her ability to rest and function normally.

**COUNT I**
**TITLE VII RETALIATION - 42 U.S.C. § 2000e-3(a)**

39. Plaintiff incorporates the preceding paragraphs as if fully set forth here.

40. Plaintiff engaged in protected opposition when, on October 2, she objected to and reported the contractor's sex-specific "bitch" remark to manager Omar Arar and asked management to address the incident. Plaintiff again opposed what she reasonably believed was unlawful harassment when her October 10 written complaint described that incident and invoked KOA's harassment, equity, and nondiscrimination policies. The earlier 8:51 a.m. October 2 corporate-contact email is alleged as context showing that Plaintiff was seeking help outside

local management; Plaintiff does not rely on that generic email, by itself, as protected Title VII opposition.

41. KOA had notice of Plaintiff's October 2 opposition through Arar, who participated later that afternoon in the housing meeting, and had written notice of Plaintiff's October 10 complaint through HR and Kyleen Peterson. Plaintiff continued escalating her complaints to HR and senior corporate recipients.

42. Plaintiff does not allege that management first conceived of moving her because of protected activity: Porter had suggested a move on September 28. Plaintiff alleges instead that after she opposed the sex-specific insult on October 2, the previously suggested move became mandatory that same afternoon, with a two-day deadline to leave supervisor housing. After her October 10 written complaint, Porter informed her on October 14 that she had to leave all employer housing by October 27 rather than the October 31 date Plaintiff says she had previously been told, and KOA maintained that deadline after further complaints.

43. Plaintiff alleges a causal connection based on the sequence and timing of these events, including Arar's knowledge of the October 2 sex-based complaint before the mandatory housing meeting later that day and the October 14 housing-departure decision four days after Plaintiff's October 10 written complaint. Plaintiff alleges that the mandatory housing change and later housing-departure decision were materially adverse actions that could dissuade a reasonable employee from opposing discrimination or harassment.

44. As a direct and proximate result, Plaintiff suffered emotional distress, anxiety, sleep disruption, loss or reduction of an employment-related housing benefit, and other compensable harm.

## COUNT II
## TITLE VII SEX DISCRIMINATION AND HOSTILE WORK ENVIRONMENT - 42 U.S.C. § 2000e-2(a)

45. Plaintiff incorporates the preceding paragraphs as if fully set forth here.

46. Plaintiff is a woman and was protected from discrimination with respect to the terms, conditions, and privileges of employment because of sex.

47. The clearest sex-specific incident alleged is the October 2 gendered insult by a contractor working on the Terramor property and management's response after Plaintiff reported it. Plaintiff alleges that this incident occurred in the context of a broader course of intimidating and intrusive workplace and employer-housing conduct that KOA knew about after her written complaints. Plaintiff does not allege that every disturbance or housing incident was independently accompanied by an express sex-based remark.

48. Plaintiff alleges that KOA failed to take reasonably effective corrective action after receiving notice of the October 2 sex-specific incident and her later detailed written complaint. By the time of her October 10 formal complaint, KOA had already required her to leave supervisor housing tied to her position; after receiving the complaint, KOA did not restore that housing, and Plaintiff alleges that the hostile conditions she reported in replacement housing continued.

49. Plaintiff alleges that the conduct, viewed as a whole and together with KOA’s response after notice, altered the conditions of her employment and employer-provided housing and created an abusive environment.

50. As a direct and proximate result, Plaintiff suffered emotional distress, anxiety, severe sleep disruption, hypervigilance, and interference with her ability to rest and work.

## COUNT III
## TITLE VII RACE AND COLOR DISCRIMINATION - PLEADED IN THE ALTERNATIVE

51. Plaintiff incorporates the preceding paragraphs as if fully set forth here.

52. Plaintiff is Black and is protected from discrimination because of race and color. Her EEOC charge expressly alleged race and color discrimination.

53. Plaintiff alleges, based on the total circumstances she experienced and contemporaneously reported, and on the race-and-color theory she later presented to the EEOC, that race and color were motivating factors in the manner in which she was singled out, removed from supervisor housing, treated in employee housing, and denied the level of protection and response she repeatedly requested from management and HR.

54. Plaintiff does not allege that any KOA manager used an express racial slur, and she does not allege the race of Richard Moya Fuentes based solely on his Puerto Rican background. Plaintiff's race-and-color theory rests on the alleged disparate treatment and total pattern described above. Plaintiff recognizes that the present record contains limited direct evidence connecting the challenged treatment to race or color and pleads this Count in the alternative without assuming facts about any comparator's race that she cannot truthfully allege.

55. Plaintiff pleads this Count in the alternative based on the race and color allegations exhausted before the EEOC and the facts she can presently allege in good faith. Plaintiff seeks relief only to the extent the evidence ultimately proves that race or color was a motivating factor in the challenged employment treatment.

## COUNT IV

## 42 U.S.C. § 1981 - RACE DISCRIMINATION IN THE MAKING AND ENFORCEMENT OF THE EMPLOYMENT RELATIONSHIP

56. Plaintiff incorporates the preceding paragraphs as if fully set forth here.

57. Section 1981 guarantees Plaintiff the same right to make and enforce contracts, including the performance, modification, and enjoyment of the benefits, privileges, terms, and conditions of the employment relationship, as is enjoyed by white citizens.

58. Plaintiff’s paid employer housing and supervisor-housing assignment were part of the terms and privileges of her seasonal employment relationship with KOA. KOA expressly tied the supervisor-housing assignment to Plaintiff’s Housekeeping Lead position.

59. Plaintiff alleges that, because she is Black, she was denied the same enjoyment of the terms and privileges of that employment relationship, including through her removal from supervisor housing, materially different housing treatment, and the manner in which management responded to her complaints and requests for protection. Plaintiff does not rely on any assumption that Richard Moya Fuentes was non-Black merely because he was from Puerto Rico.

60. Plaintiff alleges that race was a but-for cause of the unequal treatment challenged in this Count. During her employment, Plaintiff contemporaneously documented that she believed she was being singled out and treated differently. She later identified race and color as bases for that unequal treatment in her December 8, 2025 EEOC inquiry and in her June 27, 2026 EEOC charge materials. Plaintiff does not allege that later discovery itself substitutes for the factual basis required to plead this claim.

61. As a direct and proximate result of the conduct alleged in this Count, Plaintiff suffered emotional distress, anxiety, sleep disruption, loss or reduction of an employment-related housing benefit, and other compensable harm.

## VII. PRAYER FOR RELIEF

62. WHEREFORE, Plaintiff respectfully requests that the Court enter judgment in her favor and award: (a) a declaration that Defendant violated Title VII and/or 42 U.S.C. § 1981 to the extent proven; (b) compensatory damages for emotional distress and other proven nonpecuniary harm; (c) damages for the loss or reduction of the value of the employment-related housing benefit to the extent proven; (d) punitive damages to the extent authorized by law and supported by the evidence; (e) nominal damages where appropriate; (f) taxable costs; and (g) such other legal or equitable relief as the Court deems just and proper.

## VIII. JURY DEMAND

63. Plaintiff demands a trial by jury on all issues so triable.

Dated: October 13, 2026
Respectfully submitted,

______________________________

**Sharonda Boston, Pro Se**
620 S. 7th Street, Suite 2079, Las Vegas, NV 89101
Telephone: 207-719-2966 | Email: ahighercalling42@outlook.com